No. 61,470

EDWARD L. ATKINSON, *et al., Appellants*, v. WICHITA CLINIC, P.A., a corporation, *Appellee.*

(763 P.2d 1085)

Opinion filed October 28, 1988.

*Artie E. Vaughn*, of Law Offices of Artie E. Vaughn, of Wichita, argued the cause and was on the brief for appellants.

*Craig W. West*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and *Amy S. Lemley*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Edward L. Atkinson, *et al.*, appeal from an order of the district court dismissing a medical malpractice action, based upon the doctrine of respondeat superior, against the Wichita Clinic, P.A. (the Clinic) because of a settlement entered into with the Clinic's employee, Dr. Roger Ferreri.

The parties do not dispute the facts pertinent to the issues on appeal. Elizabeth L. Atkinson died on July 18, 1984, allegedly as a result of the negligent administration of anesthesia on June 20, 1984 by Dr. Roger Ferreri, who was then employed by the defendant professional corporation, Wichita Clinic, P.A.. The plaintiff, Edward L. Atkinson, is a son of the decedent and brought this action on behalf of all of her heirs, and also as the administrator of the decedent's estate. He sued both Dr. Ferreri and the Clinic, seeking damages on behalf of the heirs for wrongful death, compensatory damages on behalf of the estate for the decedent's pain and suffering, and punitive damages. The Clinic was joined as a defendant solely under the doctrine of respondeat superior.

In addition to generally denying the allegations of the petition, the Clinic filed a cross-claim against Dr. Ferreri seeking indemnification for any damages for which the corporation might be held liable under the respondeat superior theory.

On September 10, 1987, four days before the trial was to begin, Judge Ron Rogg of the Sedgwick County District Court held a hearing and signed a journal entry approving a settlement agreement among plaintiffs, Dr. Ferreri, and the Kansas Health Care Stabilization Fund (the Fund). The claims against Dr. Ferreri were settled for $60,000, of which $6,000 was to be paid to the estate for pain and suffering and $54,000 to the decedent's heirs for her wrongful death.

The journal entry approving the settlement agreement explicitly provided that plaintiffs would be permitted to proceed with their claims against the Clinic. It also specified that the agreement was not to be construed as a dismissal of the Clinic's indemnity claim against Dr. Ferreri. The court's order absolved the Fund of any obligations with regard to the case, including its obligation as the insurer of the Clinic for liability in excess of the statutory amount of $100,000 per occurrence that was then the individual responsibility of each health care provider. Finally, the journal entry specified that plaintiffs were to hold Dr. Ferreri and the Fund harmless for any obligations of the defendant Clinic to the plaintiffs.

On the same day, the Clinic filed a motion to dismiss plaintiffs' claims against it. The Clinic argued that since its liability was solely predicated on the imputed negligence of its servant, Dr. Ferreri, the plaintiff could not proceed against the corporation as master after releasing or exonerating the servant from liability. On the following day, September 11, 1987, Judge Keith Anderson heard arguments by counsel and granted the motion to dismiss. The plaintiffs timely appeal. The case was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018(c).

The agreement the plaintiffs entered into with the defendant Dr. Ferreri and the Fund was in the form of a covenant not to sue and to cease suing Dr. Ferreri. The covenant agreement did not purport to be in full satisfaction of all damages or claims of the plaintiffs and was clearly a compromise agreement in which the

plaintiffs agreed not to seek any further recovery from Dr. Ferreri or the Fund regardless of the extent of the actual damages which may have been suffered by the plaintiffs. The covenant agreement was incorporated in and made a part of the journal entry and court orders approving the settlement.

While several issues are raised by the appellants on appeal, the dispositive question is whether they can continue to maintain a claim against the Clinic after having entered into a settlement with Dr. Ferreri.

The parties do not dispute that the relationship of the Clinic and Dr. Ferreri was that of master and servant or principal and agent. Under Kansas law, there is no distinction between the liability of a principal for the torts of his agent and the liability of a master for the torts of his servant. Liability in both cases is based upon the doctrine of respondeat superior. *Simpson v. Townsley,* 283 F.2d 743, 746 (10th Cir. 1960); *Jacobson v. Parrill,* 186 Kan. 467, 472-73, 351 P.2d 194 (1960).

Appellants argue first that the covenant not to sue Dr. Ferreri does not preclude assertion of the claims against the Clinic as Dr. Ferreri's corporate employer. They contend that the settlement agreement did not constitute an unconditional *release* of Dr. Ferreri, but rather a *covenant not to sue*, explicitly reserving the right to proceed against the Clinic. Appellee contends in response that regardless of how the document is characterized, the corporation's vicarious liability was entirely extinguished when the plaintiffs entered into the settlement with Dr. Ferreri.

Several general principles relating to the law of respondeat superior should first be reviewed.

A well-known treatise on the law of agency summarizes some of the general rules with regard to vicarious liability:

"The general rule is that the principal and agent are jointly and severally liable for the tortious conduct of the agent for whose conduct he is responsible, and that, as a result, they may be joined in a single suit and a judgment may be obtained against each. In such a situation, if the judgments on the merits are inconsistent, *i.e.,* if there is a judgment for the agent and against the principal, the judgment against the principal must be set aside, unless there is some other ground for the principal's liability, as where he is personally negligent. Likewise, *where the third party releases the agent, the principal will also be relieved of liability.* If the principal controlled the prior action, he will be bound by any judgment against the agent. In any case, the amount of compensatory damages that can be awarded against each must be the same. However, where the

principal is liable for punitive damages, the amount may differ from that awarded against the agent." Sell, Agency § 94, 83-84 (1975). (Emphasis added.)

See also 53 Am. Jur. 2d, Master and Servant § 408 (general rule is that valid release of either party to master-servant relationship operates to release the other); Annot., *Release of (or Covenant Not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa*, 92 A.L.R.2d 533 § 2, 537 (in the absence of a specific statute, most cases support view that valid release of one of the parties to master-servant relationship releases the other).

In Kansas, while an unconditional *release* by the injured party of one joint tortfeasor will release all other joint tortfeasors, a *covenant not to sue* one will not release the others. *Jacobsen v. Woerner*, 149 Kan. 598, 601, 89 P.2d 24 (1939). On the other hand, if the principal's alleged liability is merely imputed by virtue of the alleged tortious conduct of its agent, the principal is not a "joint tortfeasor" in terms of being an equally culpable wrongdoer. That the master is *jointly liable* does not make him a *joint tortfeasor* as the latter term is generally understood. *Jacobson v. Parrill*, 186 Kan. at 473-74.

Under longstanding Kansas law, the effect of a discharge or release of one tortfeasor on the liability of another party is generally to be determined by the intentions of the parties as manifested by the instrument itself. *Lupton v. Torbey*, 548 F.2d 316, 319 (10th Cir. 1977); *St. Paul Mercury Indemnity Co. v. United States*, 201 F.2d 57, 61 (10th Cir. 1952); *Stueve v. American Honda Motors Co., Inc.*, 457 F. Supp. 740, 746 (D. Kan. 1978); *Cullen v. Atchison, T. & S.F. Rly. Co.*, 211 Kan. 368, 377, 507 P.2d 353 (1973); *Sade v. Hemstrom*, 205 Kan. 514, 522, 471 P.2d 340 (1970); *City of Topeka v. Brooks*, 99 Kan. 643, 647, 164 Pac. 285 (1917).

"Whether an instrument . . . is to be construed as a release or a covenant not to sue is determined by the terms of the instrument, the words used, the amount shown as paid and accepted, the substance of the agreement and *the intention of the parties as manifested by the instrument." Sade v. Hemstrom*, 205 Kan. 514, Syl. ¶ 5. (Emphasis added.)

If the document is silent on the matter and neither party produces evidence on the question of intent, other parties are "presumed" *not* released. *Stueve v. American Honda Motors Co., Inc.*, 457 F. Supp. at 747; *McCullough v. Bethany Med. Center*, 235 Kan. 732, 740, 683 P.2d 1258 (1984).

In the instant case there can be no doubt as to the intent of the parties to the covenant agreement. It is clearly stated that the plaintiffs "reserve the right to proceed with their claims against the Wichita Clinic, P.A.," and the journal entry approving the settlement also specifically reserves to the plaintiffs the right "to proceed against the Wichita Clinic, P.A., a corporation, and these covenants and indemnification agreements and the dismissal of defendant Ferreri shall in no way be a bar to plaintiffs' right to proceed against said Wichita Clinic, P.A., a corporation." The parties to the covenant agreement clearly intended to reserve to the plaintiffs the right to proceed against the Clinic. At this point, it should be noted that the Clinic was not a party to the agreement and apparently was not a party to, and did not participate in, the settlement hearing before Judge Rogg.

The Clinic argues that whether the agreement is construed as a release or covenant not to sue makes no difference in this case and that the intent spelled out by the parties and the court does not control the outcome of this case. It relies upon a trilogy of cases which appear to be controlling.

In *Jacobson v. Parrill*, 186 Kan. 467, the plaintiffs were the surviving wife and minor children of John A. Jacobson, who was killed in an automobile accident. The deceased was killed in a collision between his car and one owned by the defendant, Parrill, and driven by a Fred E. Cochran, who was also killed in the collision. The plaintiffs filed an action against Parrill based upon the doctrine of respondeat superior for the active tort of Cochran in negligently driving Parrill's automobile. No active or independent negligence or tort of Parrill was alleged, and his liability was based solely on the alleged negligence of Cochran. Thereafter, plaintiffs filed a claim against the estate of Cochran based upon the same collision and the death of Jacobson. Plaintiffs then entered into a compromise agreement and settlement with the administrator of Cochran's estate and Cochran's insurance company. In the settlement agreement, the plaintiffs specifically reserved their rights against Parrill and also agreed to "indemnify and hold forever harmless the estate of Fred E. Cochran . . . from any and all . . . claims . . . for the death of John Jacobson . . . ." 186 Kan. at 471. The court order and an order nunc pro tunc approving the settlement with the estate also sought to preserve the plaintiffs' rights against Parrill. Parrill

raised the settlement with Cochran's estate as a bar to the action against him and sought dismissal of the case against him. The district court dismissed the action, and its judgment was affirmed by this court.

Justice Fatzer, writing for a unanimous court, stated:

"Basically, there is no distinction to be drawn between the liability of a principal for the tortious acts of his agent and the liability of a master for the tortious acts of his servant. While reference here is made only to the relation of master and servant, it also pertains to the relation of principal and agent. In either instance, the liability is grounded upon the doctrine of *respondeat superior.* [Citation omitted.] It has been held that under that doctrine the liability of the master to a third person for injuries inflicted by a servant in the course of his employment and within the scope of his authority, is derivative and secondary, while that of the servant is primary, and absent any delict of the master other than through the servant, the exoneration of the servant removes the foundation upon which to impute negligence to the master. [Citations omitted.]

"While this court has held that a master may be jointly sued with the servant for a tort of the latter committed within the scope of his authority or employment [citations omitted], they are not joint tort-feasors in the sense that they are equal wrongdoers without right of contribution, for the master may recover from the servant the amount of loss caused to him by the tort, including any sum he has been required to pay a third person on account of it [citations omitted]; such payments made by the master, in the absence of fault on his part, are not made by him as a wrongdoer, but by reason of his obligation to answer for the act of the servant. The liability of the servant, on the other hand, arises wholly because of his personal act in doing the wrong; it does not arise out of the relation of master and servant, but exists upon the common law obligation that every person must so act or use that which he controls, as not to injure another. [Citations omitted.]

"Because of the doctrine of *respondeat superior,* the liability of Cochran and Parrill for all of the damages allegedly sustained by the plaintiff was joint or several, and while she could have sued either separately or both jointly, she elected, during the pendency of her action against Parrill, to sue Cochran's estate for all the damages allegedly resulting from his negligence and recovered a judgment for $5,000 and costs. No allegations were made for punitive damages in her proceeding in the probate court or in the instant case, and upon no reasonable basis could Parrill's liability to the plaintiff for compensatory damages be any greater than Cochran's liability for his wrongful act. Under the record presented and the rules just announced, Cochran, as the agent-driver and as the active tort-feasor, was primarily liable to the plaintiff because of his active negligence in killing the decedent, and, while Parrill was also liable, his liability was derivative or secondary, and was imputed only under the doctrine of *respondeat superior.* Had the petition alleged Parrill committed some independent or concurrent tortious act contributing to the death of Jacobson, his liability to the plaintiff would have been direct, and not imputed under the doctrine of *respondeat superior.* But, no such allegations were made.

"It does not appear this court has previously decided the question, but by the weight of authority of courts of this country which have considered the matter, a

judgment against an active tort-feasor establishes the full limit of liability against other persons who are only derivatively liable as under the doctrine of *respondeat superior* for the active tort-feasor's wrongful act [citations omitted], and the satisfaction of such a judgment extinguishes any right of action for derivative liability. [Citations omitted.]

"Clearly, under the allegations of the petition, Parrill did nothing to cause the plaintiff to suffer any more damages than were caused by the alleged active tort of Cochran, and the amount of those damages was established by the judgment against Cochran's estate. The admitted full satisfaction of that judgment fully extinguished the cause of action for Cochran's wrongful act, which is a bar to the plaintiff's prosecution of the present purely derivative liability action against Parrill. Our cases dealing with the release of joint, concurring or successive tort-feasors and the reservation of rights against the others [citations omitted] are inapplicable to the question presented in this appeal.

. "The plaintiff contends her rights to proceed against Parrill in the instant action were reserved to her by the McPherson County district court's judgment and order *nunc pro tunc*. We are not persuaded. In the instant action Evelyn Jacobson specifically pleaded that, as the surviving spouse of John A. Jacobson, she had the exclusive right to recover damages for the benefit of herself and the minor children, and that no personal representative of his estate had been appointed. *We think the plaintiff, because of the indemnity agreement, cannot be permitted to say she did not intend to release Parrill from the alleged derivative liability after she obtained full satisfaction of her judgment against the active tort-feasor's estate. For all damages Parrill would be compelled to pay in the instant action, he would immediately, under the doctrine of subrogation, become entitled to full indemnity and restitution against Cochran's estate* and Cochran's insurer, The Fidelity and Casualty Company of New York. [Citations omitted.] *But, by the express terms of the indemnity agreement* which she pleaded in her reply, *the plaintiff agreed to hold harmless Cochran's estate* and The Fidelity and Casualty Company of New York *from all future liability. If, as she contends, she did not intend to release and discharge the derivative liability of Parrill, thus permitting her to proceed with the instant action, she would ultimately be required, by virtue of her indemnity agreement, to reimburse Parrill; consequently, she would be traveling in a complete circle, and would realize no financial benefit. While the plaintiff provided in her release that 'the undersigned specifically reserves all of her rights against Albert S. Parrill,' the expression in the instrument to indemnify Cochran's estate,* his personal representative, and The Fidelity and Casualty Company of New York *from all future claims arising out of the collision and John A. Jacobson's death, was inconsistent with the retention of such rights,* and the only rational interpretation of her release and indemnity agreement is that she did intend, by accepting full satisfaction of the judgment against Cochran's estate, to release and discharge the derivative liability which is the subject matter of the instant action.

"*Moreover, the principal question is not what the plaintiff intended, but rather, whether she has a legal right to maintain the action.* Assuming, *arguendo*, that the plaintiff's release reserved to her all the rights she possessed at that time, and that the order *nunc pro tunc*, which, concededly, was much broader than the reservation contained in the release, was also sufficient to

reserve to her all the rights she possessed, we think when she accepted full satisfaction of the judgment against Cochran's estate, she had no rights to reserve." 186 Kan. at 472-76. (Emphasis added.)

*Simpson v. Townsley,* 283 F.2d 743, also involved an automobile collision. The plaintiff Simpson suffered personal injury in a collision between his automobile and one driven by Smith. Smith was an employee of a partnership (hereafter referred to simply as Townsley) and it was conceded that at the time of the collision Smith was acting as the employee or agent of Townsley. Simpson entered into a settlement agreement with Smith and her insurance company and executed a covenant not to sue Smith. As a part of the settlement Simpson also agreed to hold Smith and her insurance company harmless from any further claims. Following the settlement with Smith, Simpson filed suit against Townsley in the United States District Court for the District of Kansas. The action was based solely on the theory of respondeat superior with no allegations of any independent tort by Townsley. Townsley asserted as a defense the covenant not to sue given by the plaintiff to Smith and the court ultimately granted summary judgment for Townsley.

On appeal, a panel of the Court of Appeals for the Tenth Circuit upheld the district court. In reliance upon *Parrill,* the court stated:

"[U]nder the law of Kansas, while a master whose liability is predicated solely on the doctrine of respondeat superior and not on any wrong on his part may be sued jointly with his servant for a tort committed by the latter within the scope of his employment, they are not joint tort feasors in the sense they are equal wrongdoers. Where a master becomes liable to a third person for personal injuries caused solely by the act of his servant, under the doctrine of respondeat superior, and is required to respond to such third person in damages by reason of such liability, he will be subrogated to the rights of the injured third person and may recover over from his servant who is primarily liable." 283 F.2d at 746.

The court went on to say:

"Counsel for Simpson assert that the covenant not to sue did not constitute a release or exoneration of Smith and that the separate agreement to hold harmless constituted a reservation of right to sue [defendants Townsley]. . . .

. . . .

". . . Here, in the event of a recovery by Simpson of damages from one or more of Smith's employers, caused by Smith's tortious act, such employer or employers would thereupon have an action over against Smith for such damages paid by them. The covenant not to sue, standing alone and without the provision to save harmless, would have protected Smith against any action brought by Simpson against her. But, if it went no farther than that and afforded no

protection to Smith against a recovery of damages by Simpson against Smith's employers and an action over by such employers against Smith, it would be wholly abortive, we think, of its intended object and purpose. We think it clear the parties did not intend merely to relieve Smith of her direct liability to Simpson and leave her liable indirectly to Simpson for any additional damages which Simpson might recover against her employers. If the covenant not to sue were thus narrowly construed, the payment made as consideration therefor would amount to no more than a credit on the amount.of damages for which Simpson might ultimately recover a judgment and Smith would remain legally liable for the remainder. Accordingly, we think that phrase in the covenant not to sue in the instant case, 'we hereby agree to hold . . . Smith and Meda Oneida Smith harmless from any damages to ourselves resulting from or to result from said accident,' . . . was intended to protect Smith against liability, direct or indirect, for damages resulting or to result to Simpson from such accident.

"Accordingly, we conclude that the covenant not to sue and agreement to hold harmless constituted a complete exoneration of Smith and removed any foundation upon which to impute negligence to Smith's employers." 283 F.2d at 747-48.

Finally, *Wilkerson v. Lawrence*, 193 Kan. 92, 391 P.2d 997 (1964), involved another automobile collision and action for personal injuries. Plaintiff Wilkerson suffered injury in a collision between his automobile and one driven by Saudy Lawrence. Carl Bartelmei was an occupant of the Lawrence vehicle. Wilkerson filed suit against several employees of Robert Eugene Lawrence including Saudy Lawrence and Carl Bartelmei. He also sued Robert Eugene Lawrence on the theory of respondeat superior. While the action was pending Wilkerson entered into a covenant not to sue with Bartelmei in which plaintiff agreed to hold Bartelmei and his insurance carrier harmless from any liability resulting from the accident but expressly reserved his right to proceed with litigation against Robert Eugene Lawrence and the other defendants.

Thereafter, the defendant Robert Eugene Lawrence filed an amended answer setting up the Bartelmei settlement agreement as a bar to any imputed negligence or vicarious liability based upon the negligence of Bartelmei. At trial plaintiff dismissed as to all defendants except the employer Robert Eugene Lawrence. In his opening statement the plaintiff made it clear he was proceeding against Lawrence for the imputed negligence of Bartelmei and that of Saudy Lawrence. Following the opening statement the defendant sought dismissal of the action and it was granted. On appeal this court upheld the trial court's determination as to any imputed liability for the acts of Bartelmei, relying upon *Parrill*, but reversed as to any liability based upon the

separate and independent acts of the driver, Saudy Lawrence. While the case was decided upon the basis of the opening statements, the court clearly determined that the employer could not be held liable for the acts of Bartelmei after plaintiff had settled with him and given the covenant not to sue and the hold harmless agreement.

Appellants attempt to avoid the precedent of *Parrill, Simpson,* and *Wilkerson* by distinguishing the facts of the cases and by asserting an exception to the rule for medical malpractice cases. In doing so, appellants rely upon the compulsory insurance provisions of the health care provider insurance availability act (K.S.A. 40-3401 *et seq.*) and *McGuire v. Sifers,* 235 Kan. 368, 681 P.2d 1025 (1984). It appears to be the contention of the appellants that, because the Clinic was required to carry liability insurance on its corporate entity in addition to that carried by or on behalf of Dr. Ferreri, it should not be absolved of liability even though appellants settled with Dr. Ferreri. While *McGuire* does stand for the proposition that the insurance of the employer may be reached to satisfy claims based upon the negligence of an employee, it does not abolish the general rules of liability and law relative to the doctrine of respondeat superior. To the contrary, the court in *McGuire* specifically recognized that respondeat superior is applicable to health care providers and was not abrogated or limited by the provisions of K.S.A. 40-3401 *et seq.* 235 Kan. at 378-79.

We are of the opinion that the decisions in *Parrill* and *Wilkerson* are controlling. While the facts of the cases relied upon by the Clinic, may be distinguished from the present case, the applicable law applies equally to this case. The alleged liability of the Clinic was based solely on the acts of Dr. Ferreri in his treatment of Mrs. Atkinson, and no independent acts of negligence were asserted against the Clinic. Even though appellants' intention was to preserve a cause of action against the Clinic by the execution of the covenant not to sue rather than a full release, we hold that the settlement with Dr. Ferreri coupled with the hold harmless agreement removed any basis for imputing liability to the Clinic for the acts of Dr. Ferreri.

In view of the result reached, we need not address other arguments of the appellants. The judgment is affirmed.