MID KANSAS FEDERAL SAVINGS AND LOAN ASSOCIATION OF WICHITA By and Through its Receiver RESOLUTION TRUST CORPORATION and Mid Kansas Savings and Loan Association, F.A. By and Through its receiver Resolution Trust Corporation, Plaintiffs,

v.

ORPHEUM THEATER COMPANY, LTD., a Kansas corporation; Orpheum Centre Office Building, a Kansas limited partnership; Orpheum Building Management, Inc., a Kansas corporation; Orpheum Centre Owners' Association, a Kansas corporation; Orpheum Performing Arts Centre, Ltd., a Kansas corporation; et al., Defendants.

Civ. A. No. 89–1613.

United States District Court,
D. Kansas.

Nov. 24, 1992.

See also 151 B.R. 560.

David C. Adams, Karl R. Swartz, Susan R. Schrag, Morris, Laing, Evans, Brock & Kennedy, Chtd., Mert F. Buckley, Adams, Jones, Robinson & Malone, Wichita, KS, for Mid Kansas Federal Sav. and Loan Ass'n of Wichita, by and through its Receiver Resolution Trust Corporation.

Timothy B. Mustaine, Foulston & Siefkin, Wichita, KS, for Orpheum Centre Office Bldg., and Orpheum Bldg. Management.

Jack N. Turner, Turner Law, P.A., Wichita, KS, for Orpheum Performing Arts Centre, Ltd.

Alexander B. Mitchell, II, Klenda, Mitchell, Austerman & Zuercher, Wichita, KS, for M. Meredith Hill.

George A. Lowe, Lowe, Farmer, Bacon & Roe, Olathe, KS, for Earl Chandler.

David L. Dahl, Kassebaum & Johnson, Wichita, KS, for Robert Tway.

Thomas M. Bradshaw, Hoskins, King, McGannon & Hahn, Kansas City, MO, Robert A. West, Yonke, Arnold, Newbold & Regan, P.C., Kansas City, MO, for Richard W. Greene.

Thomas M. Bradshaw, Hoskins, King, McGannon & Hahn, David T. Holt, Campbell & Meyers, Kansas City, MO, for Daniel J. Burke.

Timothy B. Mustaine, Foulston & Siefkin, William S. Woolley, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for James M. Callender.

William A. Vickery, McMaster & McMaster, Wichita, KS, for Lyle J. Darling.

Timothy B. Mustaine, Foulston & Siefkin, Roger Sherwood, Sherwood, Harper & Gregory, Wichita, KS, for J. Kendall Dillehay and Terry L. Duncan.

Timothy B. Mustaine, Foulston & Siefkin, Wichita, KS, for S.W. Furgason.

John F. Reals, Houk, Reals & Weber, Stephen B. Plummer, Sedgwick County Counselor, Wichita, KS, for R.M. Haden and Treva F. Haden.

Thomas M. Bradshaw, Hoskins, King, McGannon & Hahn, Robert A. West, Yonke, Arnold, Newbold & Regan, Kansas City, MO, for Roger B. Kelsay and Mildred G. Kelsay.

William A. Vickery, McMaster & McMaster, Stan E. Wisdom, Stan E. Wisdom, P.A., Wichita, KS, for Mary Lee Lewis.

Timothy B. Mustaine, Fouston & Siefkin, Roger Sherwood, Sherwood, Harper & Gregory, Wichita, KS, for Estel L. Landreth.

Terry G. Paup, pro se.

Timothy B. Mustaine, Foulston & Siefkind, Wichita, KS, for John S. Ranson and John H. Rogers.

John F. Reals, Michille A. Nolan, Stephen B. Plummer, Sedgwick County Counselor, Wichita, KS, for Marjorie I. Setter.

William A. Vickery, McMaster & McMaster, Wichita, KS, for Steven Wisdom.

Carmen S. Greenup, Sedgwick County Legal Dept., Wichita, KS, for Sedgwick County Bd. of Com'rs.

Kurt A. Harper, Sherwood, Harper & Gregory, Wichita, KS, for Estel L. Landreth and J. Kendall Dillehay.

Bradley A. Stout, Triplett, Woolf & Garretson, Wichita, KS, for Douglas V. Horbelt.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This action was brought by Mid Kansas Federal Savings and Loan Association of Wichita ("Mid Kansas") in state court. Several months later Resolution Trust Corporation was appointed receiver for Mid Kansas and was substituted as plaintiff in this action. Plaintiff removed the action to this court. Plaintiff seeks to collect on a series of promissory notes and related guarantees and to foreclose on the real estate mortgage securing the promissory notes. Defendants Daniel J. Burke ("Burke"), Richard Greene ("Greene"), and Roger B. and Mildred Kelsay ("the Kelsays") have filed a series of counterclaims and cross-claims.

The matter is before the court on several motions filed by the various parties. Pending before the court are the following motions: (1) two motions to remand (Doc's 225 and 227) and an alternative motion to transfer (Doc. 240); (2) a motion for jury trial (Doc. 260); (3) plaintiff's motion for summary judgment on the affirmative defenses and counterclaims of the defendants (Doc. 221); and (4) a motion for summary judgment by cross-claim defendants Estel L. Landreth ("Landreth") and J. Kendall Dillehay ("Dillehay") on cross-claims brought against them (Doc. 256). The parties stipulate that Kansas law governs this case.

The facts that are relevant to these motions are as follows. A joint venture was initiated by Stan Wisdom ("Wisdom") to purchase the Orpheum Theater building in downtown Wichita, Kansas and convert it into office condominiums for resale. Landreth and Dillehay participated in the joint venture. In 1986 the project was sold to a limited partnership, with most of the original joint venturers, including Landreth and Dillehay, and some new investors participating as limited partners. The limited partnership was called Orpheum Centre Office Building. Defendants Burke, Greene, and the Kelsays were among the new limited partners. Wisdom allegedly misrepresented several important facts in order to induce the new limited partners' investments. The general partner of the limited partnership was Orpheum Building Management, Inc. The original joint venturers were the sole shareholders in this corporation, and Landreth was its president.

In April 1984 Mid Kansas loaned the joint venture $2,500,000 in exchange for a promissory note and a mortgage on the Orpheum Theater building. In 1986, the

promissory note was modified to make the limited partnership liable on the note, and personal guarantees were issued by the limited partners. The limited partnership defaulted on the loan, and in 1989 Mid Kansas brought an action in state court to recover on the note and the guarantees and to foreclose the mortgage on the Orpheum building. The RTC was later appointed receiver for the insolvent Mid Kansas and substituted as plaintiff in this action. The RTC removed the action to the United States District Court for the District of Kansas.

## I. MOTIONS TO REMAND OR TRANSFER

The court must first decide the motions to remand submitted by the defendants Burke, Greene, and the Kelsays because the defendants argue therein that this court does not have subject matter jurisdiction over this case. If this court does not have subject matter jurisdiction, it must remand the case back to state court. 28 U.S.C. § 1447(c).

The Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") provides that any suit in which the RTC is a party, either originally or substituted for an insolvent institution, is a federal question case, giving the United States district courts original jurisdiction. 12 U.S.C. § 1441a(*l*)(1). Defendants nevertheless argue that this court does not have subject matter jurisdiction because the present action was not removable to this district under the statute. At the time plaintiff removed the action to federal court, the pre-amendment version of 12 U.S.C. § 1441a(*l*)(3) was in effect. Section 1441a(*l*)(3) provided in pertinent part:

**Removal and Remand.** The Corporation may, without bond or security, remove any such action, suit or proceeding from a State court to the United States District Court for the District of Columbia, or if the action, suit or proceeding arises out of the actions of the Corporation with respect to an institution for which a conservator or a receiver has been appointed, the United States district court for the district where the institution's principal place of business is located.

The Tenth Circuit Court of Appeals held that in cases in which the RTC was substituted as a party for an insolvent institution ("RTC substitution cases"), removal to any federal court other than the district court for the District of Columbia was improper. *RTC v. Westgate Partners, Ltd.*, 937 F.2d 526 (10th Cir.1991). The court applied a plain language interpretation of the statute, while recognizing that it would be much more convenient for parties to litigate in the district where the institution was located ("the local federal district court") than in the District of Columbia. *Id.* at 530.

It was possible, under the pre-amendment statute, for an RTC substitution case to be tried in the local federal district court, albeit through an unwieldy procedure. The RTC would first remove the case to the federal district court for the District of Columbia under § 1441a(*l*)(3). That court, in turn, would transfer the case back to the local district court pursuant to 28 U.S.C. § 1404(a), which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought.

*See, e.g., Kirby v. Mercury Sav. & Loan Ass'n,* 755 F.Supp. 445, 447–48 (D.D.C. 1990); *United Sav. Bank v. Rose,* 752 F.Supp. 506, 508 (D.D.C.1990); *Belgiovine Enterprises, Inc. v. City Fed. Sav. Bank,* 748 F.Supp. 33, 38 (D.D.C.1990).[1] The

---

**1.** The case of *Piekarski v. Home Owners Sav. Bank,* 743 F.Supp. 38 (D.D.C.1990) is the paradigm of the "legal gymnastics" that the pre-amendment § 1441a(*l*)(3) caused. In that case the RTC, which had been substituted as defendant for the insolvent financial institution, removed the case to the United States District Court for the District of Minnesota. *Id.* at 40. That court ordered the case remanded to state court, whereupon the RTC again removed the action to federal court, this time to the United States District Court for the District of Columbia. *Id.* That court, finding that the conditions of 28 U.S.C. 1404(a) were met, transferred the

"where it might have been brought" language was the sticking point in these cases. This language incorporates the requirements of jurisdiction and proper venue. *See Hoffman v. Blaski,* 363 U.S. 335, 342–44, 80 S.Ct. 1084, 1088–90, 4 L.Ed.2d 1254 (1960). The district court in the District of Columbia has repeatedly held that RTC substitution cases "might have been brought" in the local federal district court although the RTC could not have removed those cases there directly. *Kirby,* 755 F.Supp. at 447; *United Sav. Bank,* 752 F.Supp. at 508; *Belgiovine Enterprises,* 748 F.Supp. at 38; *Piekarski,* 743 F.Supp. at 43. The local federal district court has subject matter jurisdiction under 12 U.S.C. § 1441a($l$)(1),[2] and venue is proper under the general venue provision of 28 U.S.C. § 1391(b). *Kirby,* 755 F.Supp. at 447; *United Sav. Bank,* 752 F.Supp. at 508; *Belgiovine Enterprises,* 748 F.Supp. at 38; *Piekarski,* 743 F.Supp. at 43.

■ In 1991 Congress amended § 1441a($l$)(3) to state in part:

> **Removal and Remand.** The Corporation, in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the Corporation as conservator or receiver of such institution.

The amendment took effect February 1, 1992, more than two years after plaintiff removed this case to federal court. Plaintiff argues that the amendment should be applied retroactively. The court agrees.[3] Procedural statutes are applied retroactively unless Congress expresses a contrary intention or retroactive application would lead to manifest injustice. *Merchants Nat'l Bank v. Safrabank,* 776 F.Supp. 538, 540 (D.Kan.1991) (holding that the 1990 amendment to the general venue statute, 28 U.S.C. § 1391(b), applied retroactively). The statute at issue in this case is clearly procedural. It does not affect the substantive rights of the parties. Congress expressed no opinion as to retroactivity. Finally, there can be no manifest injustice in proceeding in the court that would have ultimately heard the case if plaintiff had properly removed the action to the District of Columbia. Therefore, the 1991 amendment to § 1441a($l$)(3) applies, and the present action is properly before this court.

■ Even if the amendment does not apply retroactively, the defendants' motions to remand should be denied as untimely. FIRREA does not impose a specific time limit on motions to remand. Therefore, the courts have applied the time limit of the general removal statute, 28 U.S.C. § 1447(c), which states in part:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

case back to the United States District Court for the District of Minnesota. *Id.* at 42–44. The court recommended that the Congress revisit the issue. *Id.* at 44.

**2.** 12 U.S.C. § 1441a($l$)(1) provides:

In General. Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.

**3.** Other courts have declined the opportunity to decide the retroactivity of this provision. *E.g., 5300 Memorial Investors, Ltd. v. RTC,* 973 F.2d 1160, 1163 (5th Cir.1992) *Hellon & Assoc. v. Phoenix Resort Corp.,* 958 F.2d 295, 299–300 (9th Cir.1992). However, one court has recently held that another provision within the amendment does apply retroactively. *Resolution Trust Corp. v. Bakker,* 801 F.Supp. 706 (S.D.Fla.1992) (dealing with § 1441a($l$)(3)(B), which defines when the RTC is deemed substituted for an insolvent institution for purposes of the 90–day time limit on removal).

*RTC v. Sonny's Old Land Corp.*, 937 F.2d 128, 131 (5th Cir.1991); *Sweeney v. RTC,* 765 F.Supp. 33, 35 (D.Mass.1991). The preamendment version of 12 U.S.C. § 1441a(*l*)(3) made the district court for the District of Columbia the exclusive venue for removal of RTC substitution cases. It did not, as defendants argue, impose a subject matter jurisdiction limitation. *RTC v. Lightfoot,* 938 F.2d 65, 67 (7th Cir.1991); *Sonny's Old Land Corp.,* 937 F.2d at 130–31. *But see B.C. Inv. Co. v. Fleischer,* No. 90–2101–V, 1991 WL 179311 (D.Kan. Aug. 21, 1991) (Van Bebber, J.).[4] Here the defendants did not file motions to remand until nearly two years after the plaintiff removed the case to federal court. They have therefore waived their objections to any improper procedure.

Because the action is properly before this court, the plaintiff's alternative motion to transfer the case to the district court for the District of Columbia is moot.

## II. MOTION FOR JURY TRIAL

Defendants Burke, Greene, and the Kelsays have moved for a jury trial on plaintiffs legal claims against them and on their counterclaims and cross-claims. No party has filed a response to this motion. The court is therefore entitled to summarily grant the motion as unopposed. D.Kan. Rule 206(g). However, the court believes the motion should be granted on the merits.

 The first issue is whether the parties are procedurally barred from having the case tried to a jury. Burke, Greene, and the Kelsays failed to demand a jury trial within ten days of service of the last pleading, as Federal Rule of Civil Procedure 38(b) requires. However, the defendant Paup, who has since been dismissed from the action, and the cross-claim defendants did file a timely demand for trial by jury on essentially the same issues. Burke, Greene, and the Kelsays are enti-

tled to rely on the other parties' demands for jury trial. 9 Wright and Miller, Federal Practice and Procedure § 2318 (1971). In the alternative, the court can in its discretion order a jury trial where the parties have not made a timely demand. Fed. R.Civ.P. 39(b).

 The second issue is whether this case is properly triable to a jury. The issue is one of federal law. *Simler v. Connor,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). The court agrees with defendants' assertion that the case is not primarily a foreclosure action, which would be brought in equity. *See Bank of White Water v. Decker Inv., Inc.,* 238 Kan. 308, 710 P.2d 1258 (1985). The action is primarily one to recover on a promissory note and personal guarantees, clearly a legal action. This case involves other claims by the various parties, including fraud and breach of fiduciary duty. These claims are legal in nature and are therefore triable to a jury.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks recovery from defendants Burke and the Kelsays on personal guarantees they made to secure Mid Kansas' loan to Orpheum. These defendants filed affirmative defenses and counterclaims against the plaintiff, RTC, the receiver for Mid Kansas, alleging that Mid Kansas Federal fraudulently induced them into their guarantees of Orpheum's promissory note. Plaintiff moves for summary judgment on these counterclaims and defenses.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

**4.** In *Westgate Partners* the Tenth Circuit Court of Appeals did not specifically state whether the issue was one of jurisdiction or venue. However, the court noted that once removed to the United States District Court for the District of Columbia, the case could be transferred to the

local federal district court. *Westgate Partners,* 937 F.2d at 530 n. 6. This implies that § 1441a(*l*)(3) is not a jurisdictional limitation, because, as stated above, jurisdiction is a requirement for transfer.

law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this case the parties agree on all the facts relevant to this motion.

Plaintiff asserts that defendants are barred by federal statute from raising the affirmative defense of fraud in the inducement and from bringing a counterclaim based on fraud. Plaintiff relies on 12 U.S.C. § 1823(e), which provides:

> **Agreements against interests of Corporation.** No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution shall be valid against the Corporation unless such agreement
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

■ The Supreme Court unanimously held that § 1823(e) bars a defendant from raising the defense of fraud in the inducement when the FDIC, acting as receiver for the depository institution, seeks to collect on a promissory note, unless the allegedly fraudulent statement complies with the four requirements of § 1823(e). *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In the case of *FDIC v. Bell,* 892 F.2d 64 (10th Cir.1989), the Tenth Circuit Court of Appeals extended the rationale of *Langley* to uphold summary judgment against the defendant on his counterclaims of fraud by omission. The result is the same when the RTC is the receiver because FIRREA gives the RTC the same rights under § 1823 as the FDIC. 12 U.S.C. § 1441a(b)(4)(A).

The defendants do not dispute that the federal statute bars these affirmative defenses and counterclaims. Rather, defendants contend that this court lacks subject matter jurisdiction over the case, as argued in their motion to remand. As stated above, the matter is properly before this court. There is no genuine issue of material fact, and the law clearly supports plaintiff's position. Therefore, plaintiff is entitled to summary judgment on defendants' counterclaims and affirmative defenses.

## IV. MOTION BY CROSS–CLAIM DEFENDANTS LANDRETH AND DILLEHAY FOR SUMMARY JUDGMENT

Defendants Burke, Greene, and the Kelsays have filed cross-claims against Landreth and Dillehay, who were originally defendants in plaintiff's complaint. The cross-claims assert that Landreth and Dillehay, acting through Stan Wisdom, fraudulently induced the cross-claimants to enter into the limited partnership. The cross-claims are brought under the Kansas Securities Act, K.S.A. § 17–1201 *et seq.,* and several common law tort theories. Greene also cross-claims for indemnity for any liability he incurs to the plaintiff in this case. Cross-claimants have settled with Wisdom on these claims and have released him from further liability. The cross-claim defendants move for summary judgment on these claims on several grounds: that the cross-claims are barred by the applicable statutes of limitations; that the releases of Wisdom and former defendants John Ran-

son ("Ranson") and S.W. Furgason ("Furgason") operate to release the cross-claim defendants; and that there are no genuine issues of material fact as to breach of fiduciary duty, conspiracy, or disregarding the corporate entity. For the reasons set forth below, the court will grant the motion for summary judgment in part and deny the motion in part.

As discussed above, summary judgment is available when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

■ The court will first consider whether cross-claimants complied with the two-year statute of limitations on their tort claims, found at K.S.A. 60–513. The cross-claim defendants argue that the statute of limitations expired two years after the cross-claimants made their investments in the Orpheum building project. The cross-claimants made their investments in the Orpheum limited partnership in December 1985. The cross-claims were filed in September 1989.

■ Cross-claimants counter that there is a material issue of fact concerning when the causes of action accrued. A cause of action in fraud or misrepresentation accrues when the fraud is actually discovered or when, with reasonable diligence, the fraud could have been discovered. *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 62–63, 643 P.2d 100 (1982). "It does, however, imply actual knowledge, not mere suspicion of wrong. Further, even though his suspicions might have been aroused a party may be lulled into confidence by certain representations and forego any further investigation." *Id.* In this case the cross-claimants were unhappy with their investments for more than two years before they filed fraud claims. However, it is not clear at this stage whether their discontentment and suspicion amounted to knowledge of fraud more than two years before the cross-claims were filed. Moreover, it is not clear whether any failure to act sooner was caused in part by Wisdom's reassurances that the investment was doing better.

As for the other tort claims, these causes of action accrue when there is a reasonably ascertainable injury. Therefore, the cross-claim defendants' statement that the statute of limitations began to run when the cross-claimants invested in the limited partnership is incorrect. Cross-claimants assert that they did not suffer a reasonably ascertainable loss until the investment failed. Cross-claim defendants counter that the investment's poor performance before it actually failed was an ascertainable injury. Again, there is a genuine factual dispute as to when the cross-claimants' causes of action accrued.

■ Next the cross-claim defendants argue that the cross-claim brought under the Kansas Security Act is barred by the statute of limitations. Cross-claimants assert that they are entitled to recover under K.S.A. § 17–1268, which establishes a cause of action for fraud in securities sales.[5] K.S.A. § 17–1268 does not contain

---

5. K.S.A. § 17–1268 states in pertinent part:

(a) Any person who ... offers or sells a

a statute of limitations. Therefore, the three-year statute of limitations for causes of action created by statute, K.S.A. § 60–512(2), applies. *Comeau v. Rupp,* No. 86–1531, 1988 WL 93977 at *9 (D.Kan., Mar. 23, 1988); *Farney v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 86–2576, 1988 WL 156237 at *4 (D.Kan. Jan. 21, 1988); *Hecox v. R.G. Dickinson & Co.,* No. 84–1789, 1987 WL 14502 at *11 (D.Kan., Jan. 12, 1987).

The cross-claim was certainly filed more than three years after the alleged fraud occurred. Cross-claimants argue, however, that the statute of limitations on fraud cases does not begin to run until the alleged fraud is or should have been discovered. The court agrees. The Kansas courts have not decided this issue. However the federal district court in Kansas has applied the discovery rule to the Kansas Securities Act. *Farney,* 1988 WL 156237 at *4 (claim not barred by the three-year statute of limitations because "the facts are in dispute as to when Farney should have known that his injury was caused by Merrill Lynch's alleged actions....."). The cross-claim defendants note that the Supreme Court held in 1991 that there is a three-year statute of repose under the federal securities act. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). However, this decision does not affect interpretation of the state statute.

██ Third, the cross-claim defendants allege that they were released from liabili-

ty. The cross-claimants entered into release agreements with Ranson, Furgason, and Wisdom. The cross-claim defendants argue that these releases operate to release the cross-claim defendants as well. The Wisdom releases state the following:

[Cross-claimant] is fully aware that he may have suffered damages which he may not be aware of at this time and which may not arise until sometime in the future and it is the clear intention of Richard W. Greene to accept the agreed to sum of money as a full and final settlement of all claims against the releases. However, Richard W. Greene expressly reserves his claims against, and does not release or discharge ... Estel L. Landreth, J. Kendall Dillehay, ...

██ The interpretation of a release agreement is a matter of intent. *Sade v. Hemstrom,* 205 Kan. 514, syl. ¶ 4, ¶ 5, 471 P.2d 340 (1970). In this case, the release agreements for Wisdom express the clear intent to retain causes of action against the cross-claim defendants. However, at the time of the alleged tortious conduct, Wisdom, Landreth, and Dillehay were participating in a joint venture to restore the Orpheum building. Under Kansas law, joint ventures are treated the same as partnerships. *Modern Air Conditioning,* 226 Kan. 70, 596 P.2d 816 (1979) (citing *Neighbors Constr. Co., Inc. v. Seal–Wells Constr. Co., Inc.,* 219 Kan. 382, 548 P.2d 491 (1976)). When a partner acts within the scope of the partnership business he is acting as an agent of the partnership.

security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that such person did not know and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying the security from such person, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 15% per annum from the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the security, upon the tender of the security, or for

damages if the buyer no longer owns the security.

(b) Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that such nonseller did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

K.S.A. § 56–309(a). Under Kansas law releasing an agent from liability for the agent's torts operates to release the tortfeasor's principal from vicarious liability, regardless of the parties' intent. *Atkinson v. Wichita Clinic, P.A.*, 243 Kan. 705, 763 P.2d 1085 (1988). Therefore, by releasing Wisdom from liability for misrepresentation, the cross-claimants released the cross-claim defendants from any liability based solely on Wisdom's conduct. However, the agreement does not relieve cross-claim defendants from any liability based on their own actions or failures to act.[6] Specifically, Landreth and Dillehay remain liable for any breach of fiduciary duty and for any torts resulting from a conspiracy to defraud the cross-claimants. They are not subject to vicarious liability for Wisdom's conduct as their agent.

The agreement releasing Ranson and Furgason does not specifically mention the cross-claim defendants, but contains the following statement: "This Agreement shall be binding on and inure to the benefit of any partners, heirs, personal representatives, and successors of the parties hereto." It is unclear whether the parties intended the word "partners" to include participants in the Orpheum project.[7] The parties continued settlement negotiations after the release agreement was reached, which suggests that Landreth and Dillehay were not released. Furthermore, the agreement also states that the release is limited to Ranson and Furgason and their "agents, servants, successors, heirs, and personal representatives." Therefore, considering the evidence in the light most favorable to the cross-claimants, there is a genuine issue of material fact as to whether the release agreement was intended to release Landreth and Dillehay from liability.

Fourth, the cross-claim defendants argue that there is not sufficient evidence that they participated in a civil conspiracy which damaged the cross-claimants. The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Citizens State Bank v. Gilmore*, 226 Kan. 662, syl. 7, 603 P.2d 605 (1979). In particular, the cross-claim defendants argue there is no evidence of a meeting of the minds with respect to the misrepresentations. There is no evidence that Landreth and Dillehay expressly agreed with Wisdom to defraud potential investors. However, a party can prove a civil conspiracy with circumstantial evidence. *Beverly v. McCullick*, 211 Kan. 87, syl. ¶ 3, 505 P.2d 624 (1973). There is evidence that Wisdom obtained the cross-claim defendants' approval before soliciting investors, and that the cross-claim defendants knew both the content and the falsity of the statements Wisdom was making to investors. This creates a sufficient inference of meeting of the minds to preclude summary judgment.

Fifth, the cross-claim defendants argue that the cross-claimants cannot recover for breach of fiduciary duty. The cross-claimants assert that the cross-claim defendants breached their fiduciary duty to disclose the truth about the Orpheum's financial condition. Under Kansas law, fraud may include the failure to disclose information that one is under a legal or equitable duty to disclose. *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 760, 576 P.2d 674 (1978); *State ex rel. Secretary of*

6. The Kansas courts distinguish between releases and covenants not to sue. "In Kansas, while an unconditional *release* by the injured party of one joint tortfeasor will release all other joint tortfeasors, a *covenant not to sue* one will not release the others." *Atkinson*, 243 Kan. at 708, 763 P.2d 1085 (citing *Jacobsen v. Woerner*, 149 Kan. 598, 601, 89 P.2d 24 (1939)). However, the fact that an instrument is called a release is not controlling. The court must consider "the terms of the instrument, the words used, the amount shown as paid and accepted, the sub-

stance of the agreement and the intention of the parties as manifested by the instrument." *Sade v. Hemstrom*, 205 Kan. 514, Syl. ¶ 5, 471 P.2d 340. It is clear from the terms of this agreement that it was not intended to release other joint tortfeasors.

7. The court cannot consider the statement within the context of the agreement because no party has provided a copy of the release agreement to the court.

*S.R.S. v. Fomby,* 11 Kan.App.2d 138, syl. ¶ 2, 715 P.2d 1045 (1986).

The cross-claim defendants do not dispute that as limited partners they owed a fiduciary duty to the other investors in the Orpheum project. They claim, however, that this duty did not arise until after the cross-claimants had become limited partners, and that therefore, any breach of fiduciary duty did not cause cross-claimants' loss. Fraud is not actionable unless it causes the plaintiff some injury. *Canterbury Court, Inc. v. Rosenberg,* 224 Kan. 493, 502–03, 582 P.2d 261 (1978). In this case the cross-claimants did incur expenses after their initial investments in the project, including cash contributions and guarantees on the promissory note to Mid Kansas. Therefore, there is a genuine issue of material fact as to whether any fraudulent omissions by the cross-claim defendants caused the cross-claimants to expand their investments in the project.

 Finally, the court will consider the issue of Greene's indemnity cross-claim. Greene assigned his interest in the limited partnership to the Orpheum Building Managers, Inc., the corporate general partner of the Orpheum limited partnership. As part of the assignment, the corporation agreed to indemnify Greene for any liability he incurred. The cross-claim defendants were the dominant shareholders in the corporation. Greene claims he can reach the cross-claim defendants individually because the corporation was a sham and the corporate entity should be disregarded. The cross-claim defendants assert that the factors for disregarding the corporate entity of the general partner in the limited partnership have not been met.

 "The concept that a corporation is a legal entity or person apart from its members is a mere fiction of the law introduced for convenience in conducting the business...." *UAW v. Cardwell Mfg. Co., Inc.,* 416 F.Supp. 1267, 1285 (D.Kan.1976). The court will refuse to recognize the fiction and will disregard the corporate entity when the corporate form is used for fraudulent purposes or when the corporation is merely the alter ego of its dominant shareholders. *Id.* at 1286. The court considers eight factors in the decision whether to disregard the corporate entity:

(1) undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.

*Ramsey v. Adams,* 4 Kan.App.2d 184, 186–87, 603 P.2d 1025 (1979) (citing *Amoco Chem. Corp. v. Bach,* 222 Kan. 589, 594, 567 P.2d 1337 (1977). Disregard of the corporate entity is a severe measure which the court should approach with great caution. *See Kilpatrick Bros., Inc. v. Poynter,* 205 Kan. 787, 796, 473 P.2d 33 (1970). However, all factors need not be present to justify disregarding the corporate entity. *UAW v. Cardwell Mfg. Co., Inc.,* 416 F.Supp. at 1286. Each case is to be judged on its own special facts. *Kilpatrick Bros., Inc. v. Poynter,* 205 Kan. at 787, syl. ¶ 3, 473 P.2d 33; *Service Iron Foundry, Inc. v. M.A. Bell Co.,* 2 Kan.App.2d 662, 673, 588 P.2d 463 (1978).

In this case it is not disputed that although the corporation had only nominal assets at the time of its formation, it acquired other assets after formation. It is unclear, however, whether the corporation remained undercapitalized. The original joint venturers were the only shareholders, and Landreth was the president. The corporation was formed to be the general partner of the limited partnership so the original joint venturers could retain control over the project and no individuals would face unlimited liability. It appears that the corporate formalities were observed. No dividends were paid. As for the other factors, the evidence is not clear at this stage. Accordingly, considering the evidence in the light most favorable to the cross-claimants, the motion for summary judgment on the indemnity cross-claim must be denied. *See Mackey v. Burke,* 751 F.2d 322, 327

(10th Cir.1984) (jury question exists where there is sufficient evidence for reasonable minds to differ on several factors).

IT IS BY THIS COURT THEREFORE ORDERED that the motions by defendants Burke, Greene, and the Kelsays to remand (Doc's 225 and 227) are hereby denied.

IT IS FURTHER ORDERED that the plaintiff's motion to transfer (Doc. 240) is hereby denied as moot.

IT IS FURTHER ORDERED that the motion by defendants Burke, Greene, and the Kelsays for jury trial (Doc. 260) is hereby granted.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (Doc. 221) is hereby granted.

IT IS FURTHER ORDERED that the motion by defendants Landreth and Dillehay for summary judgment (Doc. 256) is hereby granted in part and denied in part.