Jerome GIRARD, Plaintiff,

v.

**TRADE PROFESSIONALS, INC. and Roger Anders, Defendants.**

**No. CIV. A. 98–2122–GTV.**

United States District Court,
D. Kansas.

May 7, 1999.

David M. Mayer, Monsees, Miller & Defeo, Kansas City, MO, for Jerome Girard, plaintiff.

William F. High, Blackwell Sanders Peper Martin LLP, Overland Park, Jana V. Richards, Sanders Conkright & Warren LLP, Kansas City, MO, Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, for Trade Professionals, Inc., Roger Anders, defendants.

## MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff Jerome Girard brings this diversity case alleging that defendant Trade Professionals, Inc. is vicariously liable for defendant Roger Anders' negligence and that Trade Professionals is itself negligent for hiring Anders. The case is before the court on Trade Professionals' motion for summary judgment (Doc. 36). For the reasons set forth in this memorandum and order, defendant Trade Professionals, Inc.'s motion for summary judgment is granted.

### I. FACTUAL BACKGROUND

Trade Professionals is a Davenport, Iowa employment agency that provides skilled tradesmen to construction contractors in six states. In early 1997, Roger Anders, a journeyman electrician, contacted Trade Professionals seeking employment. In April 1997, Trade Professionals interviewed Anders, and sent him an application for employment. During the application process, Trade Professionals did not ask Anders about or request a copy of his driving record. Trade Professionals did ask Anders if he owned his own vehicle and if he had reliable daily transportation. Anders answered both questions in the affirmative.

In April or May 1997, Trade Professionals received a request from DeVries Electric to employ an electrician on a school construction project in Overland Park, Kansas. Trade Professionals contacted Anders to fill the electrician position. Anders drove his own vehicle to Kansas to begin work. Upon arrival, Anders rented an apartment rather than staying at a hotel.

Anders received a base pay of $15.00 per hour and a "per diem" of $3.00 per hour to offset the added expenses of working at an out-of-town job site.[1] Specifically, the per diem was added to Anders' paycheck to defray his transportation costs, additional daily living expenses, meals, and hotel or lodging costs. The per diem was not contingent on a showing of additional incurred costs, and Anders was free to spend the extra income as he wished.

During the time Anders worked on the construction project, DeVries Electric directed Anders' activities while he was at the job site, but did not direct Anders when he left the job site. DeVries did require Anders to bring his own tools to the project each day. Anders drove his truck or accepted rides from other construction workers to transport both himself and his tools to the project.

Anders drove his truck to work on May 22, 1997. As Anders drove himself and a

---

1. Although technically incorrect, the court, in an effort to be consistent with the record, will refer to the increase in Anders' hourly wage as a "per diem."

co-worker home at the end of the work day, he struck and injured plaintiff Jerome Girard.

## II. SUMMARY JUDGMENT STANDARDS

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id.

## III. DISCUSSION

■ In Kansas, "[a]n employer is liable for the tortious acts of his employee only under special circumstances." Thies v. Cooper, 243 Kan. 149, 150, 753 P.2d 1280 (1988). Special circumstances exist when (1) the employee is on the employer's premises; (2) when the employee is performing work for the employer; (3) when the employee is using the employer's chattel; (4) when the employer voluntarily assumes a duty to control the employee; or (5) when the employer negligently retains a known incompetent or unfit employee. Id. In the instant case, plaintiff argues that the second and fifth special circumstances are present. Plaintiff claims that defendant Trade Professionals is vicariously liable for Anders' tortious conduct because Anders was acting in the scope of his employment, and is directly liable for negligently hiring an incompetent or unfit employee. Trade Professionals moves for summary judgment on both grounds.

### A. Scope of Employment and Responde-at Superior

■ Plaintiff first argues that Trade Professional is vicariously liable for Anders' negligence because Anders was acting within the scope of its employment when he injured plaintiff. "An employee is acting within the scope of his authority when he is performing services for which he has been employed or when he is doing anything which is reasonably incidental to his employment." Hollinger v. Jane C. Stormont Hosp. and Training Sch. for Nurses, 2 Kan.App.2d 302, 311, 578 P.2d 1121 (1978); see also PIK 3d 107.06. However, an employer is generally not liable for the negligent acts of its employee occurring while the employee is traveling to or from the workplace. See Kyle v. Postal Telegraph–Cable Co., 118 Kan. 300, 302, 235 P. 116 (1925); see also Christopher Vaeth, Annotation, Employer's liability for negligence of employee in driving his or her own automobile, 27 A.L.R. 5th 174, 233–38 (1995) (collecting cases from thirty-eight states holding that an employee is not acting within the scope of his or her employment when traveling to or from the workplace).

In *Kyle v. Postal Telegraph–Cable Co.,* the Kansas Supreme Court held that a bicycle messenger riding home after his work had ended for the day was not acting in the scope of his employment:

> While [the messenger] had in his custody the reports for the company to be later delivered, actual work for the company had ceased for the day. He was free to go where he desired. He could use his own mode and route of travel. The defendant no longer controlled his movements. He might choose any route he desired to go home, or he might not go home all.

118 Kan. at 302, 235 P. 116. Although *Kyle* was decided more than 70 years ago, it remains the law in Kansas.

■ *Kyle* is consistent with the widely-accepted rule that an employee in not acting within his or her scope of employment when driving his or her own vehicle to or from the workplace. This rule, known as the "going and coming" rule is recognized by almost every state supreme court. *See* 27 A.L.R.5th at 233–38. While the Kansas Supreme Court has not expressly used the phrase "going and coming rule" in the context of vicarious tort liability, it has done so in workers' compensation cases. *See Kindel v. Ferco Rental, Inc.,* 258 Kan. 272, 277–85, 899 P.2d 1058 (1995). Accordingly, the court concludes from *Kyle, Kindel,* and the general acceptance of the going and coming rule among various state supreme courts, that the Kansas Supreme Court would apply the going and coming rule to the facts of the instant case. This conclusion is consistent with the doctrine of respondeat superior as applied by Kansas courts:

> Under Kansas law, a principal's liability for his agent's negligence is determined by asking whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities. The primary factor to be considered is the control which the principal had over the agent. If the principal had no right to direct and control the agent at the time in question, the principal is not vicariously liable to third parties for the agent's negligence.

*Huenink v. Rice,* 859 F.Supp. 1398, 1405 (D.Kan.1994) (citations omitted).

■ The court concludes that Trade Professionals had no control over Anders' actions once he clocked out for the day. As in *Kyle,* Anders could have traveled home by any route or he could have chosen not to go home at all. Anders was not on call and could not be ordered back to work until the next morning. The court also concludes that Anders was not engaged in the furtherance of Trade Professionals business by driving himself and a co-worker home at the end of the work day. To hold otherwise, would potentially subject every employer in Kansas to liability for its employee's negligence in driving to and from work, would directly contradict the doctrine of respondeat superior as applied in Kansas, and would undermine the sound public policy supporting the going and coming rule.

In reaching these conclusions, the court rejects plaintiff's arguments that Anders was a 24 hour-per-day employee because Trade Professionals sent him to an out-of-state job site and paid him a per diem to cover the added expenses of working away from home. It is undisputed that Anders was not directly reimbursed for his travel. The per diem was added to Anders' paycheck to defray his transportation costs, additional daily living expenses, meals, and hotel or lodging costs. Furthermore, the per diem was not contingent on a showing of incurred travel or transportation costs, and Anders was free to spend the extra income as he wished.

The court notes that plaintiff cited a myriad of workers' compensation cases in his effort to show that Trade Professionals is vicariously liable for Anders' negligence. While workers' compensation cases can be helpful in determining vicarious liability of the employer for the torts of its employ-

ees, they do not control the instant case. *See Thies*, 243 Kan. at 154, 753 P.2d 1280 (stating that workers' compensation cases are distinguishable from third-party liability cases because the public policies are "completely different."). The rationale for this distinction has been explained as follows:

> [T]he differences between the common law and workmen's compensation usage of the term 'employment' stem from the fundamentally different purposes served by the employment concept in each context. Thus, whereas at common law the 'master-servant' concept was utilized primarily to delimit the scope of the master's vicarious tort liability and was thus concerned with injuries caused by the employee, the basic inquiry in compensation law involves which injuries to the employee should be insured against by the employer. Although there is considerable overlap between the two fields, in each context the determination of the presence or absence of a sufficient 'employment' relationship must ultimately depend on the purpose for which the inquiry is made.

*Munyon v. Ole's Inc.*, 136 Cal.App.3d 697, 186 Cal.Rptr. 424, 427 (1982) (citations omitted). Accordingly, while plaintiff's arguments may establish that Anders was acting in the scope of his employment for purposes of the Kansas Workers' Compensation Act, they fail to establish the same for purposes of finding Trade Professionals liable for Anders' negligence.

*B. Negligent Hiring*

██ "Kansas has long been associated with the majority of states recognizing an action for negligent hiring and/or retention of an unfit or incompetent employee." *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 590–91, 682 P.2d 653 (1984). The negligent hiring doctrine recognizes that employers have a duty to hire only safe and competent employees. "An employer

breaches this duty when it hires ... employees that it knows or should know are incompetent." *Id.* at 590, 682 P.2d 653. However, in Kansas, liability normally only attaches to an employer when the employee's acts occur at the employer's business or are committed within the scope of the employee's employment. *See Schmidt v. HTG, Inc.*, 265 Kan. 372, 373, Syl. ¶ 9, 961 P.2d 677 (surveying history of Kansas negligent hiring cases and concluding that no Kansas court has imputed liability to an employer for its employee's acts occurring away from workplace and outside the scope of employment), *cert. denied,* —— U.S. ——, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998). In the instant case, Anders was neither at work nor acting within his scope of employment when he injured plaintiff; he was simply driving home. Anders' position was no different from any other employee driving home from work. Furthermore, Anders' use of his truck to transport himself home was not related to the position for which he was hired by Trade Professionals. Accordingly, Trade Professionals is not subject to liability under the negligent hiring doctrine.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Trade Professionals, Inc.'s motion for summary judgment (Doc. 36) is granted.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**