(30 P.3d 1050)
No. 85,611

DENNIS MULROY, *Appellant/Cross-appellee*, v. DUANE L. OLBERDING, *Appellee,* and WESTERN RESOURCES, INC. *Appellee/Cross-appellant.*

Opinion filed September 14, 2001.

*Robert V. Eye*, of Irigonegaray & Associates, of Topeka, for the appellant/cross-appellee.

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee/cross-appellant Western Resources, Inc.,

*William Larson* and *Ron D. Martinek*, of Gehrt & Roberts, Chartered, of Topeka, for appellee Duane L. Olberding.

Before PIERRON, P.J., MARQUARDT and BEIER, JJ.

PIERRON, J.: Dennis J. Mulroy sued Duane L. Olberding and Western Resources, Inc. (Western) alleging that on April 15, 1997, Olberding operated his vehicle while under the influence of alcohol, causing an automobile accident and resulting in personal injuries and damages to Mulroy. Mulroy claimed Olberding was an employee of Western and that at the time of the accident, Olberding was working within the scope of his employment with Western. Olberding admitted in his answer that at the time of the accident, he was working within the scope of his employment with Western. Western denied this allegation in its answer and averred Mulroy's injuries and damages were proximately caused by his own negli-

gence. Western and Mulroy both filed motions for summary judgment on whether the doctrine of respondeat superior applied. The uncontroverted facts from both motions are as follows.

Olberding normally worked in a laboratory at Western's facility known as the Jeffrey Energy Center in St. Mary's, Kansas. On the night before the accident, Olberding took a Valium and went to a bar, where he consumed beer for several hours. When he awoke the next morning, Olberding told his wife that he was going to call Western and tell them he was sick. She advised him that he was not going to call in sick for a hangover. That morning, Olberding was to report to Western's facility located in Lawrence, Kansas.

As Olberding drove toward Lawrence, his vehicle hit the rear end of Mulroy's vehicle. Olberding asked Mulroy if he was okay. After Mulroy asked Olberding to call the police twice and then got out of his car, Olberding got in his vehicle and left. Olberding then drank 2 to 3 ounces of bourbon and Pepsi Cola which was in his vehicle. The highway patrol stopped Olberding; the results of Olberding's blood alcohol test was .10.

After the accident, Olberding called and advised his supervisor that he had been involved in an accident and wanted to take a sick day. When Olberding denied being hurt, he then requested a vacation day. Western had a policy that possession or consumption of alcohol or drugs not medically authorized while at work, or reporting to work under the influence of alcohol or nonmedically authorized drugs, was prohibited. Olberding was aware of Western's policy. Western terminated Olberding because on April 15, 1997, Olberding was "under the influence of alcohol in a vehicle during working hours; [Olberding] was involved in a motor vehicle accident."

Western's motion also averred that Olberding told his supervisor and the operations superintendent at Western that he was not on his way to work when the accident occurred; rather, he was going to St. Francis Hospital to see his drug/alcohol rehabilitation counselor. In his response, Mulroy admitted Olberding made this statement, but it was inconsistent with other portions of his testimony and was not dispositive of the issue. Olberding responded that he

made the statement, hoping it would help him keep his job with Western.

Mulroy's motion also averred that if Western had not specifically directed Olberding to report to its Lawrence Energy Center on the morning of the accident, Olberding would not have been in the location where the accident took place. The district court asked Western's counsel at the hearing if Olberding's employment was terminated because he was under the influence of alcohol while driving the vehicle during his working hours, violating company policy, and if Western had directed Olberding to report to work in Lawrence. Western's counsel responded, "Yes, Sir."

The district court found Olberding did not take the day off until after the accident occurred; Olberding was terminated from his employment with Western because he was operating a vehicle while under the influence of alcohol during working hours and involved in an automobile accident; Western had control of Olberding at the time of the accident because it directed him to travel to work at a place other than his normal place of employment; and Olberding was on company time at the time of the accident. It concluded Olberding was acting in the course of his employment at the time of the accident, denied Western's motion for summary judgment, and granted Mulroy's motion for partial summary judgment.

Olberding filed a motion in limine admitting fault for the accident and requesting the district court to exclude evidence at trial of his being under the influence of alcohol, leaving the scene of the accident, receiving treatment for alcohol abuse, and receiving coverage from liability insurance. Olberding argued such evidence was not relevant as he was admitting 100% fault. Olberding contended the only remaining issue was the nature and extent of Mulroy's claimed damages.

Western advised it was *not* stipulating to fault, but it did not plan to get into negligence evidence because it would "be very foolish" to do so. Mulroy argued against the motion because Western was maintaining its position on comparative fault, making all evidence for causation of the accident relevant and admissible.

The district court stated it did not appear comparative negligence would be an issue before the jury. However, the court stated that if Olberding's and Western's positions were different at trial, it would reconsider the matter. The district court granted Olberding's motion in limine. It also ordered Western to notify Mulroy 5 days prior to trial of its intention to rely upon comparative fault as a defense.

A hearing was held a day before the trial to discuss jury instructions. Mulroy's attorney reminded the district court it had excluded evidence of Olberding's alcohol use and advised that Olberding had not yet filed a stipulation of fault, nor had Western notified him that it was defending the case on the basis of comparative fault. Thus, he understood the trial would not encompass comparative fault, and he objected to a jury verdict form for comparative fault. The district court advised it had prepared an instruction pursuant to PIK Civ. 3d 106.01, stating that Olberding admitted the accident occurred as a result of his negligence.

On the day of trial, the district court advised that the PIK Civ. 3d 107.04 instruction regarding agency which Mulroy had requested earlier would only be given if an issue of comparative fault was before the jury. Mulroy stated the jury should be told as a matter of law Western was responsible for liability. Western's counsel then stated, "Judge, [Mulroy] could dismiss Mr. Olberding." Olberding's counsel agreed, saying, "Take him [Olberding] out of the case. Then they get their instruction."

When court reconvened after the noon recess, Mulroy reminded the district court that Olberding and Western suggested dismissing Olberding because they had "all now admitted liability." Mulroy believed it was appropriate to dismiss Olberding from the case under Kansas law and asked the district court to do so. Olberding had no objection to Mulroy's motion to dismiss if it was with prejudice. Mulroy advised he would proceed against Western only. When the district court asked for Western's comments, Western's counsel cryptically stated, "After you've ruled, Judge, I'll have some comment." The district court granted the motion to dismiss Olberding with prejudice.

Immediately thereafter, Western moved for a dismissal of itself. It argued Mulroy could not proceed with its claim for vicarious liability against Western because Mulroy had dismissed Western's agent with prejudice. Western relied upon *York v. InTrust Bank, N.A.*, 265 Kan. 271, 962 P.2d 405 (1998), and *Atkinson v. Wichita Clinic, P.A.*, 243 Kan. 705, 763 P.2d 1085 (1988). Mulroy argued his motion was made for the specific reason to proceed against Western and remove the issue of agency which was discussed earlier. The district court, however, agreed with Western and granted its motion to dismiss.

Mulroy then asked the district court to reconsider its order dismissing Olberding because the intent of his motion to dismiss Olberding was not the same intent present in *Atkinson*. For some reason, Olberding advised the court there was no conspiracy between himself and Western. When Mulroy had offered to dismiss Olberding, the only discussion was of Olberding's testimony as a witness. Mulroy, by the tenor of the earlier discussions, believed he could proceed against Western on the theory that liability had been admitted. Western advised it was not consulted about Mulroy's decision to dismiss Olberding. The district court denied Mulroy's motion to reconsider the dismissal.

Mulroy filed a motion to amend "the judgment of dismissal of Western Resources set forth in the Journal Entry of Dismissal," pursuant to K.S.A. 60-259(f), requesting reinstatement of Western as a defendant.

The district court believed this case illustrated the rule that release of an active tortfeasor has the effect of releasing one who is only vicariously liable under the respondeat superior theory; if not, an active tortfeasor without funds or resources to satisfy a judgment can stipulate to liability regardless of the effect on the passive tortfeasor. The district court held Mulroy's dismissal with prejudice of his claim against Olberding extinguished his claim against Western based upon the theory of respondeat superior and denied Mulroy's motion to amend.

Mulroy appeals from the district court's denial of his motion to amend the judgment of dismissal. Western cross-appeals the dis-

trict court's orders denying its motion for summary judgment and granting Mulroy's motion for partial summary judgment.

As a preliminary matter, Olberding argues this court does not have jurisdiction to consider the dismissal with prejudice in his favor. He believes Mulroy has tried to raise this dismissal as an issue on appeal, because in his brief, Mulroy comments that the district court should have granted Mulroy's motion to set aside the prior dismissal of Olberding because he did not anticipate the possible effect of the dismissal.

In his notice of appeal, motion to amend the judgment, and brief, Mulroy has not appealed or raised the dismissal of Olberding. Rather, Mulroy contends the district court erred in dismissing Western because it was not just, under K.S.A. 2000 Supp. 60-241(a)(2), to dismiss Western when such a result was not a condition for dismissing Olberding. Although both dismissals are intertwined and must be discussed, only the dismissal of Western is an issue in Mulroy's appeal.

This brings us to our first issue: What was the effect of the dismissal of Olberding?

Mulroy claims the dismissal of Olberding did not terminate his claim against Western because Olberding was not a necessary party and Western's derivative liability was not destroyed. He cites numerous cases from other jurisdictions to support his arguments. However, the determinative issue is whether the dismissal of Olberding had the effect of a covenant not to sue Olberding or a general release of Olberding and Western.

The distinction between a covenant not to sue and a release of a tortfeasor can be obscure and troublesome to define, yet courts recognize and enforce the rights of parties based upon this distinction. *Western Spring Service Co. v. Andrew*, 229 F.2d 413 (10th Cir. 1956). The distinction is stated as follows:

" '(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

" '(2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.' " 229 F. 2d at 418 (quoting 4 Restatement, Torts § 885).

Whether an injured party has given a release or a covenant not to sue to one of the tortfeasors is a legal question over which an appellate court has unlimited review. *York*, 265 Kan. at 283. As we state below, since Kansas follows the "specific identity rule," and has rejected the "strict bar rule" in negligent torts, we find there was no general release.

Because of the unusual facts of this case, our analysis begins with a review of the different theories of liability between multiple tortfeasors.

Under joint and several liability, an individual who participates in a tort does not escape liability by showing that another individual is liable also. In other words, another person's cooperation does not justify the misconduct of a defendant. Thus, a tort which is committed jointly by several can be treated as joint or several at the election of the injured party. 74 Am. Jur. 2d, Torts § 61. In the absence of statutory authority, compensatory damages may not be apportioned in a judgment establishing liability of the joint tortfeasors, regardless of the degree of culpability. A person injured by joint tortfeasors, however, has only one full satisfaction for any damages sustained, and once satisfaction is obtained, further proceedings are barred. 74 Am. Jur. 2d, Torts § 69.

The Kansas Legislature enacted the comparative negligence statute in 1974. L. 1974, Ch. 239, § 1; see K.S.A. 60-258a. Thus, joint and several liability is not followed for negligent torts. In comparative negligence cases, the issue involves the percentages of causal responsibility, " 'and distinctions between primary, secondary, active and passive negligence lose their previous identities. The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the "all or nothing" concepts are swept aside.' [Citation omitted.]" *Luther v. Danner*, 268 Kan. 343, 346, 995 P.2d 865 (2000).

In Kansas, the liability of a master for the tortious acts of his or her servant is based upon the doctrine of respondeat superior.

"Under that doctrine the liability of the master to a third person for injuries inflicted by a servant in the course of his employment is derivative and secondary and that of the servant is primary. Where the liability of the master is not predicated on any delict on his part, but solely on his secondary liability under the doctrine of respondeat superior, the exoneration of the servant removes the foundation upon which to impute negligence to the master.

"[W]hile a master whose liability is predicated solely on the doctrine of respondeat superior and not on any wrong on his part may be sued jointly with his servant for a tort committed by the [servant] within the scope of his employment, they are not joint tortfeasors in the sense they are equal wrongdoers. Where a master becomes liable to a third person for personal injuries caused solely by the act of his servant, under the doctrine of respondeat superior, and is required to respond to such third person in damages by reason of such liability, he will be subrogated to the rights of the injured third person and may recover over from his servant who is primarily liable." *Simpson v. Townsley*, 283 F.2d 743, 746 (10th Cir. 1960).

The general rule is that liability premised upon the doctrine of respondeat superior may not be apportioned. This is based upon the principle that the master may be entitled to contribution from the servant, but a servant has no right of contribution against the master. 74 Am. Jur. 2d, Torts § 77.

Even though it is not clearly enunciated in these authorities, it is clear the doctrine of respondeat superior is based upon the general concept of joint and several liability. With this background, we now turn to the effect of the dismissal of Olberding.

There are three different viewpoints towards general releases which were well discussed in Justice Allegrucci's opinion in *Luther*, which was not cited by either party.

Courts adopting the "flat bar rule" believe " 'that language such as "all other persons, firms or corporations liable" is unambiguous and discharges all potential tortfeasors from liability. [Citations omitted.] . . . Flat bar courts thus look only to the four corners of the release document and do not allow consideration of extrinsic evidence.' " *Luther*, 268 Kan. at 346-47. This rule began in the common-law " 'unity of discharge' rule that release of one joint tortfeasor discharges all others [which] was based on the concept of the indivisible wrong of joint and several liability." 268 Kan. at 347-48. A majority of the states have rejected the flat bar rule when

comparative negligence has replaced the concept of indivisible wrong. 268 Kan. at 348.

Courts adopting the "specific identity rule" conclusively presume that the liability of a party which is not named or specifically identified or described by the terms of the release is not released. 268 Kan. at 347. The specific identity rule arises, in part, from Section 4 of the Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 185 (1939). It provides that a release of one joint tortfeasor by the injured person only discharges the other tortfeasors if it specifically states so. These courts are divided into two categories: (1) parol evidence of the parties' intent in an action by a party to a release and a stranger to that release is admissible even if the terms of the release are facially unambiguous, and (2) parol evidence of the parties' intent is admissible only if the court determines that the release agreement terms are ambiguous. 268 Kan. at 347.

The third viewpoint is the intent rule, which emphasizes the contract principle that the parties' intent governs. This rule is a middle ground "between the plaintiff-oriented specific identity rule and the defendant-oriented flat bar rule" whereby the parties' intent governs. 268 Kan. at 348.

In 1979, this court adopted the specific identity rule for actions brought under K.S.A. 60-258a. In comparative negligence actions, releases utilizing general release language no longer extinguish the potential liability of codefendants unless they are specifically named in the release. *Geier v. Wikel*, 4 Kan. App. 2d 188, 190, 603 P.2d 1028 (1979). The Kansas Supreme Court in *Luther* rejected the flat bar rule and adopted the specific identity rule set forth in *Geier*. 268 Kan at 351-52.

"Once comparative fault principles replaced those of joint and several liability, the earlier rules that 'boilerplate universal release language' could extinguish rights no longer fit the theory of wrongdoing. Because the boiler-plate language continued to appear in release instruments, our courts formulated an approach that harmonizes with the current tort theory. The approach, moreover, affords protection to the settling party by creating a presumption against wholesale discharge and affords protection to the nonsettling tortfeasors by making it rebuttable." 268 Kan. at 351-52.

The unnamed party claiming inclusion in the release bears the burden of rebutting the presumption. 268 Kan. at 352.

Western, in essence, is arguing the dismissal with prejudice of Olberding is a general release of all tortfeasors. Such an interpretation attempts to breathe life back into the flat bar rule in comparative negligence cases. Although the liability of Western is premised upon respondeat superior, the controlling fact in Mulroy's cause of action was the comparative negligence of Olberding and Mulroy. Thus, the specific identity rule for releases in comparative negligence cases applies. The dismissal of Western was, therefore, inappropriate, and we reverse that action.

We also believe the instant case is factually distinguishable from *York*, 265 Kan. 271, and *Atkinson*, 243 Kan. 705. In those two cases, there were actual settlements on claims with the released tortfeasors. In our case, the plaintiff did not receive anything from Olberding for the dismissal by way of settlement.

The other issue in this appeal is whether the district court erred by granting Mulroy's motion for partial summary judgment and denying Western's motion for summary judgment.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Western argues Olberding was driving his own vehicle to go to work; he was not already at work. As such, Western contends, the doctrine of respondeat superior does not apply. It relies primarily upon *Girard v. Trade Professionals, Inc.*, 50 F. Supp. 2d 1050 (D. Kan. 1999).

Western's references to certain portions of *Girard* are misleading because Western's cites oversimplify the "going and coming rule." Western focuses on language that respondeat superior does not apply to negligent acts of an employee which occur while the employee is traveling to or from the work place. Western cites this case because "the Kansas Supreme Court has not expressly used the phrase 'going and coming rule' in the context of vicarious tort liability" as it has in workers compensation cases. 50 F. Supp. 2d at 1053. The *Girard* court concluded the Kansas Supreme Court would apply the going and coming rule to the facts of its case. The *Girard* court reached this conclusion because the Kansas courts' application of the doctrine of respondeat superior was consistent with the going and coming rule. 50 F. Supp. 2d at 1053. It found Kansas courts applied the following rule to respondeat superior cases:

" 'Under Kansas law, a principal's liability for his agent's negligence is determined by asking whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities. The primary factor to be considered is the control which the principal had over the agent. If the principal had no right to direct and control the agent at the time in question, the principal is not vicariously liable to third parties for the agent's negligence. [Citations omitted.]' " 50 F. Supp. 2d at 1053.

However, the important issue in the going and coming rule is not necessarily whether the employee has reached the location of his employment. Rather, the test for whether respondeat superior applies in travel situations is whether the employee, while traveling to or from the workplace, was under the control of the employer. *Girard*, 50 F. Supp. 2d at 1053-54. See also *Major v. Castlegate, Inc.*, 23 Kan. App. 2d 694, 697, 935 P.2d 225, *rev. denied* 262 Kan. 961 (1997) (the test to decide the existence of agency, so that the liability for an employee's negligence will be imputed to the employer, is the right to control the employee).

Olberding, with his union representative, was interviewed about the accident by three Western supervisors in June 1997. Olberding admitted that at the June meeting he gave a written statement to Western advising he was going to St. Francis to get help when the

accident occurred. He said he made the statement because his union representative had advised him that such a statement would help him keep his job. Olberding testified the truth was that he was on the way to the Lawrence Energy Center, which was within the course of his duties, when the accident occurred. Olberding was going to go to St. Francis after the accident occurred but did not arrive because he was arrested. His employment was terminated on the day of the meeting.

Western's policy required employees to report to law enforcement any motor vehicle accidents involving the public while at work. Olberding testified it was his understanding that Western could not terminate his employment for being intoxicated or not reporting a motor vehicle accident outside of his work hours. Olberding testified he is not paid for travel time to and from his home and the Jeffrey Energy Center, but when he travels from his home to another location, he is paid. The accident occurred on his way to the Lawrence Energy Center, and he was being paid by Western. Copies of the affidavits by Olberding's supervisor and the operations superintendent and Western's written policy, all specify that Western prohibited employees working while under the influence of alcohol. An admission by Western and a copy of Olberding's termination notice from Western, attached to Mulroy's motion, clearly state Olberding was discharged because he was under the influence of alcohol during working hours.

The evidence shows Olberding was working for Western and Western had the right to control, and did control, Olberding at the time of the accident. Western controlled Olberding because, under its policies, it had cause to terminate Olberding's employment at the time of the accident. If Olberding had not been under Western's control, under its policies, it could not have terminated his employment for being under the influence and failing to report an accident while traveling to the Lawrence facility. Controlling employees' consumption of alcohol or requiring employees to report an automobile accident while working benefits Western—it increases employee safety and decreases risk of injury and liability. As Olberding's union representative apparently knew, if Western

could not control Olberding's activities at the time of the accident, its policies did not provide cause for his dismissal.

The evidence completely supports the district court's factual findings and its conclusion that Olberding was under the control of Western when the accident occurred. The only real contrary evidence was Olberding's earlier statement which he later recanted. Western obviously did not believe the earlier statement, as its actions showed.

We reverse the dismissal of Western and affirm the orders regarding summary judgment. The matter is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.