(95 P.3d 1028)

No. 91,395

ALAYNA R. COBB, *Appellant*, v. DANIEL W. CORBETT, an Individual, *Defendant*, and WESTAFF, INC., *Appellee*.

Opinion filed August 20, 2004. 

*Frank R. Cobb* and *Devoe G. Treadwell*, of Wichita, for the appellant.

*Jerald W. Rogers*, of Triplett, Woolf & Garretson, LLC, of Wichita, for the appellee.

Before GREENE, P.J., MCANANY, J., and BRAZIL, S.J.

BRAZIL, J.: Alayna Cobb appeals from the trial court's order dismissing her negligence action against Westaff, Inc. (Westaff).

Alayna Cobb was injured when she and Danny Corbett collided in a car accident in November 2000. In November 2002, Cobb brought a negligence action against Corbett, Farmer's Insurance Company, Inc. (Farmer's), and Westaff. Cobb's action against Westaff, Corbett's employer, was based on the theory of respondeat superior.

Cobb subsequently settled with Corbett and Farmer's for the sum of $50,000 and executed a release in their favor. In the release, Cobb agreed to discharge Corbett and Farmer's from "any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to bodily injury arising" from the November 2000 accident. Lan-

guage in the release also provided that $50,000 was all the money Cobb would receive from Corbett and Farmer's "for any and all of my claims as a result of this accident." An addendum to the release provided that Cobb would not be prohibited from pursuing her claims against other legally responsible parties, including Corbett's employer.

In February 2003, Cobb filed an amended petition against Corbett and Westaff. Again, Cobb's action against Westaff was based on the theory of respondeat superior. In its answer to the amended petition, Westaff set forth several defenses, including that the petition failed to state a claim upon which relief could be granted and that Cobb's claims were barred by the law of release and satisfaction. In August 2003, Westaff moved to dismiss the action, alleging Cobb's petition failed to establish a claim against Westaff. Westaff asserted that releasing an employee in exchange for settlement proceeds also releases the employer when the action is based on respondeat superior. Thus, Cobb's action of releasing Corbett from the case effectively released Westaff.

The trial court conducted a hearing in August 2003. The trial court noted that the action against Westaff was based solely on a theory of respondent superior and there was no independent liability of Westaff. The trial court found as a matter of law that when a plaintiff settles with and gives an absolute release to a particular defendant, the plaintiff cannot then sue and recover from the defendant's employer based on a respondeat superior theory. The trial court relied on our Supreme Court's decisions in *York v. InTrust Bank, N.A.*, 265 Kan. 271, 962 P.2d 405 (1998), and *Atkinson v. Wichita Clinic, P.A.*, 243 Kan. 705, 763 P.2d 1085 (1988). The trial court granted Westaff's motion to dismiss. In November 2003, Corbett was dismissed as a defendant in the case.

We agree and affirm.

This appeal arises from the trial court's grant of Westaff's motion to dismiss. The trial court granted the motion to dismiss based on Cobb's settlement and release of her claim against Corbett. In *Goldbarth v. Kansas State Board of Regents*, 269 Kan. 881, 885, 9 P.3d 1251 (2000), our Supreme Court noted that when matters outside the pleading are presented to and not excluded by the

court, a motion to dismiss for failure to state a claim shall be treated as one for summary judgment. Because the evidence relating to Cobb's settlement and release of her claim against Corbett was a matter outside her pleading, we apply a summary judgment standard of review.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999)." *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

The sole question on appeal is whether the trial court erred in its conclusion that the settlement and release of Cobb's claim against Corbett barred any further action against Westaff based on a respondeat superior theory. "The effect of a release or covenant not to sue is a legal question, over which we have unlimited review." *York*, 265 Kan. 271, Syl. ¶ 1.

In reaching its conclusion, the trial court relied on *Atkinson* and *York*. *Atkinson* involved facts similar to those in the instant case in that the plaintiffs sued both the doctor and the doctor's employer for medical malpractice. The suit against the employer was based solely on the theory of respondeat superior. The plaintiffs subsequently settled with the doctor but explicitly reserved their right to proceed against the doctor's employer. The plaintiffs agreed to hold the doctor harmless for any obligations of the employer to them. Upon a motion to dismiss, the trial court dismissed the claim against the clinic. In affirming the trial court's decision, our Supreme Court noted that the employer's liability was based solely on the doctor's acts and not on any independent acts of negligence. Our Supreme Court held that although the plaintiffs intended to preserve their action against the employer by executing a covenant

not to sue instead of a full release, the settlement with the doctor combined with the hold harmless agreement removed any basis for imputing liability to the employer for the doctor's acts. 243 Kan. at 714.

Included within our Supreme Court's decision in *Atkinson* was a discussion of *Jacobson v. Parrill*, 186 Kan. 467, 351 P.2d 194 (1960). There, the plaintiffs were the surviving wife and children of Jacobson, who had been killed in an automobile collision. The plaintiffs brought separate suits against Cochran, who was the driver of the other car, and Parrill, who was the owner of the other car. The claim against Parrill was based solely on a respondeat superior theory. The plaintiffs subsequently settled with Cochran's estate and insurance company but reserved their right to proceed against Parrill. The plaintiffs agreed to indemnify and hold harmless Cochran's estate for any claims arising from Jacobson's death. Parrill sought dismissal of the claim against him, arguing this settlement barred any further action against him. The trial court dismissed the action. Our Supreme Court affirmed the trial court's decision, finding that the plaintiffs' acceptance of full satisfaction of the judgment against Cochran's estate effectively extinguished their claim against Parrill. 186 Kan. at 469-72, 476. In making this decision, our Supreme Court stated:

"It does not appear this court has previously decided the question, but by the weight of authority of courts of this country which have considered the matter, a judgment against an active tort-feasor establishes the full limit of liability against other persons who are only derivatively liable as under the doctrine of *respondeat superior* for the active tort-feasor's wrongful act [citations omitted], and the satisfaction of such a judgment extinguishes any right of action for derivative liability. [Citations omitted.]

"Clearly, under the allegations of the petition, Parrill did nothing to cause the plaintiff to suffer any more damages than were caused by the alleged active tort of Cochran, and the amount of those damages were established by the judgment against Cochran's estate. The admitted full satisfaction of that judgment fully extinguished the cause of action for Cochran's wrongful act, which is a bar to the plaintiff's prosecution of the present purely derivative liability action against Parrill. Our cases dealing with the release of joint, concurring or successive tort-feasors and the reservation of rights against the others [citations omitted] are inapplicable to the question presented in this appeal." 186 Kan. at 474-75.

Both *Jacobson* and *Atkinson* were cited in *York*, 265 Kan. at 284. In *York*, our Supreme Court set forth the rule that "[a] release or covenant not to sue an agent also releases a principal who is purely vicariously liable for imputed negligence under a theory of respondeat superior." 265 Kan. 271, Syl. ¶ 3. This rule did not apply to the facts in that case, however, because defendant InTrust had independently engaged in tortious conduct. 265 Kan. at 286-87.

The holdings in *Jacobson* and *Atkinson*, which are further supported by our Supreme Court's discussion of these cases in *York* establish that when a plaintiff sues an employee, and an employer on a respondeat superior theory, and subsequently settles with, releases, and agrees to hold harmless the employee, the employer is also effectively released from the case. Applying these holdings to the instant case, Cobb's settlement with Corbett and Farmer's, coupled with the agreement to discharge Corbett and Farmer's from any claims for Cobb's injuries from the accident, operated to bar Cobb's respondeat superior claim against Westaff.

Nevertheless, Cobb believes that reliance on these cases is misplaced. Cobb asserts that *Atkinson* refers to cases, including *Jacobson*, which were decided prior to the enactment of the comparative negligence statute, K.S.A. 60-258a, in 1974. In addition, Cobb points out that *York* is factually distinguishable. Cobb asserts that since the adoption of comparative negligence in Kansas, the courts have moved away from theories that would bar recovery from a principal based on vicarious liability after the injured party has released the agent.

Cobb cites to *Luther v. Danner*, 268 Kan. 343, 995 P.2d 865 (2000), where our Supreme Court discussed the rule to be applied in Kansas when a release is executed in favor of one or more parties in a comparative negligence case. It is important to note that *Luther* did not involve the same issue as that in the case at hand. Instead, the issue on appeal in *Luther* was whether the general release of one party effectively released other parties who were *comparatively* at fault. In *Luther*, our Supreme Court discussed the flat bar rule, the specific identity rule, and the intent rule. Under the flat bar rule, the release of one tortfeasor operates to release all others. This rule stems from the concept "of the indi-

visible wrong of joint and several liability." 268 Kan. at 347-48. In contrast to the flat bar rule, the specific identity rule discharges only the parties that are named in the release. Between the flat bar rule and the specific identity rule is the intent rule, which allows the parties' intentions to govern.

*Luther* quoted a significant portion of this court's decision in *Geier v. Wikel*, 4 Kan. App. 2d 188, 603 P.2d 1028 (1979), which discussed the effect of releases under comparative negligence principles in Kansas:

" 'An injured party whose claim for damages is exclusively subject to the Kansas comparative negligence statute may now settle with any person or entity whose fault may have contributed to the injuries without that settlement in any way affecting his or her right to recover from any other party liable under the act. The injured party is entitled to keep the advantage of his or her bargaining, just as he or she must live with an inadequate settlement should the jury determine larger damages or a larger proportion of fault than the injured party anticipated when the settlement was reached. It follows that the type of release given will have no effect on any party not specifically named in the instrument.' 4 Kan. App. 2d at 190.

In addition, the Court of Appeals quoted from a similar resolution to a similar question in *Stueve v. American Honda Motors Co., Inc.*, 457 F. Supp. 740, 748-49 (D. Kan. 1978):

' " '[S]ince a given defendant in a case governed by K.S.A. 60-258a can be held liable in any event only for that percentage of injury attributable to his fault, a release of that defendant cannot inure to the benefit of potential co-defendants. Under former rules of joint liability, to release one defendant unconditionally may have been viewed as relinquishment of the right to recover one's entire damages from a party liable, and thus as extinguishing the action as to potential defendants who stand as third-party beneficiaries to the release. This cannot be the case in an action under K.S.A. 60-258a.' " ' 4 Kan. App. 2d at 190." 268 Kan. at 350-51.

The *Luther* court went on to adopt the specific identity rule set forth in *Geier*, stating that:

"Once comparative fault principles replaced those of joint and several liability, the earlier rule that 'boilerplate universal release language' could extinguish rights no longer fit the theory of wrongdoing. Because the boilerplate language continued to appear in release instruments, our courts formulated an approach that harmonizes with the current tort theory. The approach, moreover, affords protection to the settling party by creating a presumption against wholesale discharge and affords protection to the nonsettling tortfeasors by making it rebuttable." 268 Kan. at 351-52.

*In Mulroy v. Olberding*, 29 Kan. App. 2d 757, 30 P.3d 1050 (2001), *rev. denied* 273 Kan. 1036 (2002), a respondeat superior case, this court applied the reasoning in *Luther*. The court ultimately found that the release of the employee from the lawsuit did not operate to release the employer. Under the facts, Mulroy sued Olberding after they were involved in an automobile accident. Mulroy also sued Olberding's employer, Western Resources, Inc. (Western), on a respondeat superior theory. At a hearing regarding jury instructions on the day before trial, there was a suggestion by Mulroy that a particular jury instruction be given. Western's counsel suggested that Olberding be taken out of the case so that Mulroy could get his instruction. When the hearing resumed after the noon recess, Mulroy asked the trial court to dismiss Olberding. Mulroy advised he would proceed solely against Western. When the trial court asked for comments, Western's counsel said that he would comment after the ruling. The trial court dismissed Olberding with prejudice. Western's counsel immediately moved for dismissal, arguing that Mulroy could no longer proceed on a claim of vicarious liability once Olberding was dismissed. The trial court agreed and granted the dismissal with prejudice. 29 Kan. App. 2d at 757-61.

Mulroy appealed the trial court's decision, and this court determined that because Kansas applies the specific identity rule in negligent tort cases, there was no general release. 29 Kan. App. 2d at 763. This court went on to state:

> "Western, in essence, is arguing the dismissal with prejudice of Olberding is a general release of all tortfeasors. Such an interpretation attempts to breathe life back into the flat bar rule in comparative negligence cases. Although the liability of Western is premised upon respondeat superior, the controlling fact in Mulroy's cause of action was the comparative negligence of Olberding and Mulroy. Thus, the specific identity rule for releases in comparative negligence cases applies." 29 Kan. App. 2d at 766.

The *Mulroy* court noted that *Atkinson* and *York* are factually distinguishable because the plaintiffs in those cases received actual settlements from the released tortfeasors. In contrast, Mulroy received no settlement from Olberding for the dismissal. 29 Kan. App. 2d at 766.

The instant case is also factually distinguishable from *Mulroy*. Cobb settled her claim against Corbett for the sum of $50,000. She agreed to discharge Corbett from "any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to bodily injury" from the November 2000 accident. In addition, Cobb agreed she would not receive any additional money from Corbett "for any and all of my claims as a result of this accident." Different from the facts of *Mulroy*, Cobb received satisfaction of her claim against Corbett before extinguishing his liability.

As discussed previously, the facts of this case fit squarely within our Supreme Court's decisions in *Atkinson* and *Jacobson*. Specifically, these holdings establish that when a plaintiff brings a negligence action against an employee and an employer on a respondeat superior theory and subsequently settles with, releases, and agrees to hold harmless the employee, the employer is also released from the action. *Atkinson* was decided after comparative negligence liability was adopted in Kansas and also after this court set forth the specific identity rule in *Geier*, 4 Kan. App. 2d 188. This court in *Mulroy*, although applying the specific identity rule, did not change the rule set forth in *Atkinson*. Because *Mulroy* was decided on different factual circumstances, the holding is inapplicable to the facts of this case.

Affirmed.